```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
CHARLES V. MORRIS,

                           Plaintiff,          07-CV-0220

              v.                               **DECISION**
                                               **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security,

                           Defendant.
_____
```

## **INTRODUCTION**

Plaintiff, Charles W. Morris ("Plaintiff"), brings this action pursuant to Title II and XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). The Plaintiff specifically alleges that the decision of the Administrative Law Judge, Steven J. Neary ("ALJ"), that the Plaintiff was not disabled within the meaning of the Social Security Act, was not supported by substantial evidence in the record and was contrary to the applicable legal standards.

Both the Plaintiff and the Commissioner move for judgement on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"). The Commissioner asserts that the ALJ's decision was supported by substantial evidence in the record. The Plaintiff claims that the ALJ's decision was not supported by substantial evidence in the record and was erroneous. For the reasons set forth below, this court finds that the ALJ's decision was not supported by substantial evidence in the record. Therefore, the Plaintiff's

motion for judgement on the pleadings is granted, the Commissioner's motion is denied, and the case is remanded to the Commissioner for calculation and payment of benefits as of the Plaintiff's disability onset date, November 23, 2003.

## BACKGROUND

Plaintiff, a former purchasing/stock selector, warehouse worker, sales representative, and route sales representative, filed an application for DIB on May 13, 2004, claiming disability due to cardiomyoapathy, mitrovalve prolapse and arrhythmia, depression, and osteoarthritis in the left knee. (Transcript of Administrative Proceedings at 73, 102-4) (hereinafter "Tr."). His application was initially denied on April 28, 2005, and Plaintiff timely requested an administrative hearing on May 12, 2005. (Tr. at 59-62). An administrative hearing was held on January 31, 2006 before ALJ Steven J. Neary. (Tr. at 390-432). The Plaintiff appeared, with counsel, and testified at the hearing which was held by video teleconference. Id.

In a decision dated May 26 2006, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 18-30). The ALJ's decision became the final decision of the Commissioner on December 28, 2006, when the Appeals Council denied further review. (Tr. at 8-10). The Plaintiff then filed this action. The Plaintiff has since been found disabled by the Commissioner, in a decision dated December 23, 2008, after an administrative hearing was held on a subsequent disability application. In that decision, the Plaintiff was found disabled as

of May 26, 2006, the date of the ALJ's decision in this case. Therefore, the issue presented is whether there is substantial evidence in the record to support a finding that the Plaintiff was disabled from November 23, 2003 to May 26, 2006.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case *de novo*). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Plaintiff moves for judgement on the pleadings pursuant to Rule 12(c), on the grounds that the ALJ's decision is not supported

by substantial evidence in the record and is not in accordance with the applicable legal standards.  The Commissioner claims that the ALJ's decision is supported by substantial evidence in the record and moves for judgment on the pleadings to affirm this decision. Judgment on the pleadings may be granted under Rule 12 (c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that "the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief," judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  This Court finds that there is substantial evidence in the record to find that the Plaintiff was disabled within the meaning of the Social Security Act as of November 23, 2003.  Therefore, the Plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.

**II.  The Commissioner's decision to deny the Plaintiff benefits is not supported by substantial evidence in the record.**

In his decision, the ALJ adhered to the required 5-step sequential analysis for evaluating Social Security disability benefits cases. (Tr. at 18-30).  The 5-step analysis requires the ALJ to consider the following:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5) if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

In this case, the ALJ found that (1) the Plaintiff has not engaged in substantial gainful activity since his alleged onset date; (2)the Plaintiff has the severe impairments: a history of cardiomyopathy, degenerative joint disease, and atrial fibrillation; (3)the Plaintiff does not have an impairment or combination of impairments that meets or medical equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff is unable to perform any past relevant work; and (5) the Plaintiff has the residual functional capacity to perform sedentary work, absent a requirement to work at heights or around hazards such as moving machinery. (Tr. at 20-22). The ALJ concluded that based on the Plaintiff's age, 44, education, at least high school, work experience, and residual functional capacity to perform sedentary work, there were significant jobs in the national economy that the Plaintiff could perform, and the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 29). This court finds that the ALJ's decision was not supported by substantial evidence in the record, and that

there was substantial evidence in the record to find that the Plaintiff was disabled within the meaning of the Social Security Act.

   A. <u>The ALJ did not give the proper weight to the opinions of Plaintiff's treating physicians.</u>

The ALJ gave greater weight to the opinion of the State Agency consultive and examining physicians because their opinions were consistent and supported by the medical evidence in the record. (Tr. at 21, 27, 28). The ALJ gave "little weight" to an opinion by Plaintiff's treating cardiologist, Dr. Chakravarty, because he incorrectly attributed his opinion to Plaintiff's family physician, Dr. Aguillon, who the ALJ claimed arrived at his opinion from "older medical information". (Tr. at 27, citing a report at Tr. 318-391; <u>See also</u>, Tr. at 305). The ALJ also gave more weight to a non-examining State Agency physician, who reviewed the Plaintiff's medical records, than to Dr. Harnath Clerk, who had been treating the Plaintiff for a month before he completed a residual functional capacity form. (Tr. at 28, <u>See</u> Commissioner's Brief, at 9).

Generally, a treating physician's opinion is given more weight than a consulting physician. 20 C.F.R. § 416.927(d)(2), § 416.1527(d)(2). If the treating physician's opinion is found to be well-supported by medical evidence, and is not inconsistent with other substantial evidence in the record, it is controlling. <u>Id</u>. To determine the weight given to a physician's medical opinion, the ALJ must consider the following factors: (1) whether there was a

treatment relationship; (2) the length, frequency, nature , and extent of the treatment relationship; (3) whether the relationship is supported by medical and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is specialized; and (6) any other relevant factors. See 20 C.F.R. § 416.927 (d)(3)-(6), § 416.1527(d)(3)-(6). The opinion of a non-examining consulting physician may be considered, however it is not sufficient to override the opinion of a treating physician, when the treating physician's opinion is consistent with other substantial evidence in the record. Schisler v. Sullivan, 3 F.3d 563, 566 (2d Cir. 1993).

In this case, the ALJ incorrectly attributed the opinion of Plaintiff's treating cardiologist, Dr. Chakravarty, to his family physician, Dr. Aguillon. If the ALJ had properly considered this opinion as that of a long-term treating specialist, he would have given the opinion controlling weight. In addition, the ALJ incorrectly gave greater weight to a non-examining consulting physician, than to Dr. Harnath Clerk, who filled out a residual functional capacity form after treating the Plaintiff for a month. Dr. Clerk's opinion should have been given greater weight as he had a treatment relationship with the Plaintiff and his opinion was consistent with Plaintiff's treating cardiologist. See Schisler, 3 F.3d, at 566.

On February 18 2004, the Plaintiff was admitted to St. Vincent Mercy Medical Center for three days for biventrical failure due to atrial fibrillation which was discovered in November 2003. (See Tr.

at 177, 204, 208). Plaintiff was again admitted to St. Vincent's on April 1, 2004 for a two week stay. (Tr. at 208). During his hospital stays, Plaintiff had a cardiac catheterization and three cardioversions. Id. The cardiac catheterization revealed dilated non-ischemic cardiomyopathy, moderately severe pulmonary hypertention, and atrial fibrillation. (Tr. at 211-12). Plaintiff had shortness of breath and a cough, with minimal edema of the feet. (Tr. at 208). Plaintiff's primary care physician, Dr. Aguillon, reported that Plaintiff also had significant depression and osteoarthritis, although he didn't complain of significant pain at that time. (Tr. at 208-9).

Thereafter, Plaintiff saw his cardiologist, Dr. Supriya Chakravarty, who noted that prior to the catheterization, Plaintiff had lost 35 pounds, but was still overweight. (Tr. at 234). He reported that Plaintiff was being considered for implantable cardioverter defibrillator therapy ("ICD"). (Tr. at 177).

On June 17, 2004, cardiac surgeon, Dr. Kesari Sarikonda, performed the defibrillator implantation. (Tr. at 253). After the surgery, Plaintiff followed up with Dr. Chakravarty who noted that he was still short of breath on moderate activity, but ankle swelling was gone and he had lost over 50 pounds. (Tr. at 176). He noted that plaintiff felt better. Id. By October, Plaintiff had gained 70 pounds. (Tr. at 175, 380). However, Dr. Chakravarty reported that he had no shortness of breath or ankle swelling and his energy level had improved. Id. At that time, an electrocardiogram revealed sinus rhythm with first degree block and

a cardiac examination showed slightly displaced apex and a grade 1 basal systolic murmur. Id.

On December 6, 2004, Dr. Chakravarty completed a disability assessment based on the listings in Appendix 1, Subpart P, of the Regulations. (Tr. at 318-319). He opined that "the performance of exercise testing would present significant risk to the individual, and resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest." Id. He also opined that the Plaintiff was unable to "carry on physical activity with symptoms of inadequate cardiac output, pulmonary congestion, systemic congestion, or anginal syndrome." Id. This report was incorrectly attributed to Plaintiff's primary care physician, Dr. Aguillon, by both the ALJ and the Commissioner. (Tr. at 27, Commissioner's Brief at 8).

A State Agency physician examined the Plaintiff on September 13, 2004, and opined that the plaintiff "would not have difficulty with work-related physical activities such as sitting [but] may have difficulty standing, walking, lifting, and carrying objects." (Tr. at 325-7). The ALJ erroneously determined that this opinion was "consistent" with the December 2006 opinion of Dr. Chakravarty, who stated that the Plaintiff would have "marked limitations" in all physical activity, and was unable to carry to do any physical activity when experiencing symptoms of cardiac failure. (See Tr. at 28)

Dr. Chakravarty performed an echocardiogram on February 21, 2005 which revealed increased wall thickness, enlarged left ventricular internal dimension with reduced systolic function, global hypokinesia, and an estimate ejection fraction of 35%. (Tr. at 375). Plaintiff followed up with Dr. Chakravarty on July 14, 2005, and had lost 18 pounds and felt better. (Tr. at 376).

On July 21, 2005 Plaintiff was again admitted to St. Vincent Mercy Medical Center after experiencing symptoms of atypical chest pain. (Tr. at 363-4). An electrocardiogram demonstrated sinus rhythm with first degree arteriovenous block and nonspecific ST-T changes. Id. A cardiac examination revealed S1/S2 heart sounds and was irregular. Id.

In January 2006, after treating the Plaintiff for a month, Dr. Harnath Clerk completed a residual functional capacity form for the State of New York. (Tr. at 384-7). Dr. Clerk opined that the Plaintiff could not perform sedentary work due to cardiomyopathy, cardiac arrhythmia, depression, obesity, and ADHD. Id. He listed the Plaintiff's medications as Coreg, Paxil, Xanax, Diovan, Aldecton, Lasix, potassium chloride, and oxygen. Id. The ALJ gave little weight to this opinion because it was "based solely on the claimant's reported history and subjective complaints." (Tr. at 28). Instead, the ALJ gave greater weight to a residual functional capacity assessment by non-examining State Agency physician who reviewed the plaintiff's medical records because "the State Agency had access to the claimants medical treatment history, which was the basis for their determination." Id. Yet, the non-

Dr. Chakravarty performed an echocardiogram on February 21, 2005 which revealed increased wall thickness, enlarged left ventricular internal dimension with reduced systolic function, global hypokinesia, and an estimate ejection fraction of 35%. (Tr. at 375). Plaintiff followed up with Dr. Chakravarty on July 14, 2005, and had lost 18 pounds and felt better. (Tr. at 376).

On July 21, 2005 Plaintiff was again admitted to St. Vincent Mercy Medical Center after experiencing symptoms of atypical chest pain. (Tr. at 363-4). An electrocardiogram demonstrated sinus rhythm with first degree arteriovenous block and nonspecific ST-T changes. Id. A cardiac examination revealed S1/S2 heart sounds and was irregular. Id.

In January 2006, after treating the Plaintiff for a month, Dr. Harnath Clerk completed a residual functional capacity form for the State of New York. (Tr. at 384-7). Dr. Clerk opined that the Plaintiff could not perform sedentary work due to cardiomyopathy, cardiac arrhythmia, depression, obesity, and ADHD. Id. He listed the Plaintiff's medications as Coreg, Paxil, Xanax, Diovan, Aldecton, Lasix, potassium chloride, and oxygen. Id. The ALJ gave little weight to this opinion because it was "based solely on the claimant's reported history and subjective complaints." (Tr. at 28). Instead, the ALJ gave greater weight to a residual functional capacity assessment by non-examining State Agency physician who reviewed the plaintiff's medical records because "the State Agency had access to the claimants medical treatment history, which was the basis for their determination." Id. Yet, the non-

examining State Agency physician found that the Plaintiff could perform activities consistent with sedentary work. (Tr. at 349-356). The ALJ erred in giving greater weight to the non-examining physician's residual function capacity assessment, as Dr. Clerk had treated the Plaintiff for a month and his opinion was consistent with Plaintiff's treating cardiologist. Schisler v. Sullivan, 3 F.3d 563, 566 (2d Cir. 1993).

This Court finds that there is substantial medical evidence in the record to support the finding that the Plaintiff was disabled within the meaning of the Social Security Act. Plaintiff's treating cardiologist, whose opinion should be given controlling weight, opined that the Plaintiff had marked limitations in all activities. In addition, Dr. Clerk treated the patient and opined that he could not perform sedentary work. When given the proper weight, the medical evidence from Plaintiff's treating physicians provides substantial evidence to support the finding that he was disabled within the meaning of the Social Security Act.

B. The ALJ improperly found that the Plaintiff's testimony was not entirely credible.

The Plaintiff testified he was unable to work because he has trouble breathing, his heart rate and his blood pressure increase with activity, he gets dizzy when bending over, he cannot sit for very long without changing positions, and he cannot concentrate. (Tr. at 394). He listed his medications as Coreg, Digoxen, Diovan, Aldecton, Larix, Potassium, Tylenol III, Xanax as needed, and Paxil. Id. He also uses oxygen at night. (Tr. at 400). He said

Page 11

that the medications make him tired and he has to lay down during the day because of his heart and breathing problems, and the side effects from the medication. (Tr. at 395). Plaintiff also testified that he could not stand for more than twenty minutes, he could lift between 10-20 pounds, and he could walk 3/4 of a mile. Id. He said that he sometimes blacks out when he bends over and when he walks too far. (Tr. at 396).

Plaintiff's daily activities include watching T.V., napping, cooking, and taking care of his dog. (Tr. at 397). He takes care of his personal hygiene, but has trouble when he has to bend over to put on his socks. Id. Plaintiff also stated that he has depression and is taking medication, but the symptoms are getting worse. (Tr. at 414-15). He said that he had been seeing a psychiatrist from 1996-2003, and he has bad days about two times per week. Id.

The ALJ found that the claimant's testimony was not entirely credible because he reported a lack of concentration, but could watch T.V. for an extended period of time, and did not tell the State Agency physicians about this problem. (Tr. at 24). Also, the ALJ found the Plaintiff's allegations of black outs were not credible because there were no medical reports of syncope, presyncope, orthopnea, or PND. Id. Likewise, the ALJ did not find his testimony that he had two bad days a week credible, because the record showed he was active. Id.

This Court finds that the Plaintiff's testimony was credible and supported by the medical evidence. The Plaintiff had a history of cardiac failure, shortness of breath, obesity, and depression

Page 12

for several years. He was taking several medications to treat these problems, and was experiencing side effects therefrom. The Plaintiff had symptoms associated with cardiac failure, which is supported by the medical evidence and his testimony in which he stated that he was tired and lacked concentration, and would experience shortness of breath and black-outs. While the Plaintiff is able to engage in some activities, including watching T.V. for an extended period of time, the Plaintiff is unable to perform the types of activities necessary to work, and there is substantial evidence in the record to support this conclusion. Therefore, based on the medical evidence in the record, and the Plaintiff's testimony, this Court finds that there was substantial evidence in the record to find that the Plaintiff was disabled from November 23, 2003 to May 26, 2006.

## **CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was not supported by substantial evidence in the record. Therefore, I grant the Plaintiff's motion for judgment on the pleadings, and the Commissioner's motion is denied. This case is remanded to the Commissioner for calculation and payment of benefits as of November 23, 2003 through May 26, 2006.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        s/Michael A. Telesca
                                      MICHAEL A. TELESCA
                        United States District Judge

Dated:    Rochester, New York
            April 14, 2009